Next case is number 06-1231, Gary J. Kolasi against Cybex International. Mr. Fuhrer. Good morning, and may it please the court, I'd first like to direct the court's attention to the issue that was specified in the court with regard to the finality of the judgment. In reviewing the docket and in reviewing the pretrial order, there is no explicit indication that the lower court ever adjudicated the counterclaims that were at issue in this case. Although there are certainly indicia of waiver or mootness or whatever issue that the other side may present to you, the law, this court has consistently held that in deciding whether or not the lower court adjudicated the claim, the issue was really whether or not it was done explicitly. And this court is not going to try to read between the lines of a pretrial order or some other document to make that decision in the first instance. Well, where does that leave us, with a non-final judgment or have both sides agreed that these claims are dead? We have not agreed to that, Your Honor. We believe that this renders the judgment at the lower level non-final and it should be remanded back for a final judgment. Well, but are you suggesting you want to litigate the counterclaims or do you agree that they should be dismissed? We would expect them to be dismissed. We have no intention of pursuing them. The whole point seems to be, have they been resolved through some level of adjudication? They're just floating out there right now. So the ball's in your court, Your Honor, that you would move to dismiss the counterclaims? I mean, they're your counterclaims. That is correct. You could move to withdraw them? Yes, Your Honor. We could do that now at the lower level and have the court grant that and enter a final judgment. You can do that right now if you wish. Your Honor, obviously, if we do that, it would still require a final judgment and obviously we have an interest. There's a second level to this jurisdictional argument. I think if you want to proceed with the argument today, you need to do something that will show that these claims are no longer in the case. Your Honor, we were not willing to stipulate that the lower court did that. We believe that the judgment and we believe this court has decided in the past that there is a need to remand, but then they have at least allowed for judicial efficiency to hear the arguments and then allow it to be remanded back to the lower court to finalize things. We would invite the court to do that. No, we've never done that. When have we ever done that? No. I think that we've dismissed non-final judgments. But we've also, my recollection is that in cases of the absence of a 54B, we've heard the argument on the merits and given the parties 10 days or whatever to go back to the district court to get their 54B. Yes, Your Honor, but I think that it's an analogous example that what we're looking to do here is recognizing that the lower court does have to put in a final judgment. The issue should remain the same and this court would be, it would be prudent for this court to hear these issues today, allow the judgment to go back, or the court, the decision remanded to the lower court so that they could then. No, I don't think you're understanding. The question is, are you going to cooperate with the other side to produce a final judgment while the case is here and before we render a decision on the merits? My understanding is we cannot render a decision on the merits and then remand to the district court to enter a final judgment. It doesn't work that way. You have to have a final judgment before we have jurisdiction to render a decision on the merits. Now, you can, the two of you, perhaps, can cooperate and stipulate to a dismissal of the counterclaims before the district court, which might make the judgment final. But if you're telling us that you're unwilling to do that, I don't see that we have jurisdiction. Your Honor, I apologize. You can stipulate to dismissal without prejudice. Mr. Delaney, will you approach the bench and we'll see if we can, without spending very much more time, resolve this question. Since you're all here, we would like to extend ourselves to hear your argument and to resolve the question with the perception that however way this goes may or may not moot whatever were the subject of the counterclaims. I don't think we could agree to have them stipulate to dismiss without prejudice and let me explain why. Prior to trial, there was discovery. They took expert discovery and their counsel told me they're dropping their invalidity defense. They expressly said, we're removing it from the case. Was that the counterclaim? That is the counterclaim for invalidity and inequitable conduct. In fact, in the pre-trial memorandum, they stipulated they wouldn't provide any evidence and in the pre-trial order, they agreed with us the only issues were infringement. I think I agree with you if I'm understanding you correctly. Our normal, the way we typically see this come up is where the appellee has pending counterclaims and that's the normal case where they're dismissed without prejudice because in case we flip on infringement, the appellee would want to preserve his right in the face of infringement to argue invalidity. I think, tell me if I'm wrong, I think this is a completely different circumstance because you're the appellant here. Correct. And you've indicated to us, I think, that you never did or at least at this point didn't have an intent to go forward with those counterclaims. That's correct. So it seems to me that withdrawal or dismissal with prejudice would be in order and not without prejudice. But do you, any reason I'm wrong about that? I hadn't considered with or without prejudice, but because the issue was never tried, I think without prejudice- But your plan was, you thought these had long gone. They were never, neverland. You weren't planning to pursue these in any way, shape, or form, irregardless of the outcome here. That's correct, Your Honor. And we're not looking to, certainly we're going to cooperate with the other side, go back down to the lower court, have the lower court properly adjudicate these counterclaims with or without prejudice. We believe that- Not adjudicate these counterclaims. Dismiss the counterclaims. Wait, are you planning to seek an adjudication of these counterclaims? A dismissal. A resolution on the record that shows that they're no longer pending before the lower court. Okay. Not on the merits. Not on the merits. No, wait. Are you willing to stipulate that the counterclaims should be dismissed with prejudice? Yes, Your Honor. Then maybe you guys should do that. Well, I don't know. You haven't litigated them. I mean, of course, you know how you've been conducting this case. You haven't litigated the counterclaims. If you intend to litigate them, there's no final judgment. You shouldn't be here. If you don't intend to litigate them, you can proceed with this appeal. Your Honor, with regard to this case being remanded back down, if we stipulate— We don't remand. We would dismiss. If, in fact, you shouldn't be here because there's no final judgment, you can—I don't know what you can do—go back and litigate the counterclaims. No, Your Honor. We do not look to pursue the counterclaims without this court making their decision. So we're not looking to go back down and deny this court jurisdiction at this time. You're saying that if we sustain the judgment of infringement, you want to go back and try validity? No, Your Honor. Then what's wrong with a dismissal with prejudice? There is none, Your Honor. I apologize. I just wanted to make sure that if this case gets remanded back to the lower court, obviously, that we would invite the opportunity to— You don't want it on the merits of the issues which are properly before us? Yes, Your Honor. Well, I guess I don't know how that would work. I would look to pursue the opportunity to present this at this time with the stipulation that we withdraw with prejudice, Your Honor. Well, can the two of you agree that the counterclaims are withdrawn? Yes, Your Honor. But you need an order from the district court. You'll have to go and get the order, but I suppose— Are we willing to listen to the argument in that case? If they both agree that the counterclaims are— Also, talk so the microphone picks up what you said. I believe the First Circuit also says that with a pretrial order, at least maybe I'm misunderstanding it, but the way I understand it, the First Circuit precedent says that the pretrial order basically defines the issues. It controls and, as I understand it, defines the boundaries of the litigation. And by not raising impolity at the pretrial order, it's pretty much out of the case. It's gone. You're saying they're out of the case anyway, but why do you care whether the counterclaims are dismissed with prejudice or just out of the case? Well, I care that they're dismissed with prejudice because what I hear him suggesting is that if he gets another bite of the apple, well, he wants to have multiple bites, not just the ones that he won on. In other words, if he wins, it goes back. He's saying he should be able to also try invalidity to the jury as well as— Is that what he said? If he wins, there's no invalidity. You're saying whether you win or you lose, you're not pursuing, in this case, the counterclaims of invalidity. Yes, Your Honor. Okay. Then we'll do whatever it takes to make that happen. All right. We'll then hear the argument on the merits. Let's restart the clock. Thank you, Your Honor. There is a second jurisdictional question that was raised by the appellee in the briefing which has to do with the timely filing of a notice of appeal. The original issue, I believe, was related in that way because the question then becomes, what date can we point to and identify a final judgment that would start the clock for appeal, to filing a notice of appeal? Let's assume your appeal is properly here. Yes, Your Honor. With regard to all four issues, because they challenged the jurisdiction of this Court with regard to the last issue of reviewing the JMOL. Whatever you want to argue to us. The only JMOL issue that was raised was whether there was evidence of infringement with respect to all these models, right? Yes, Your Honor. You also make an argument that there should have been a claim construction which required horizontal deflection or something like that, right? Horizontal displacement, Your Honor, yes. How was that raised? Did you ask for a jury instruction about it? About the horizontal displacement? Yeah. We asked for the judge to agree to do a clarification of her claim construction. Did you ask for a jury instruction? No, Your Honor, because she ruled that it wasn't... Well, you've got to ask for a jury instruction. You can't just sort of have disembodied claim construction issues. Those have got to be tried to some action other than claim construction by the District Court. Either you make a request for a jury instruction or you move for JMOL or you do something. But you didn't do that with respect to this issue, right? Your Honor, we believe we did. When we filed our motion in limine and asked that the Court not allow the other side to present a case of infringement that excluded horizontal displacement, we believed that her ruling demonstrated that she was... I'm sorry. Help me. What was the in limine motion? How did that affect this? The judge indicated her unwillingness to adjust the... to clarify her construction of flexible hinge. What did you request in the in limine motion? We requested that the plaintiffs not present a case absent the requirement of displacement in a horizontal direction. I'm sorry. I don't understand. You asked for what? There were two issues that were raised at the motion in limine. The first one was that the Court's construction of flexible hinge required horizontal displacement. And the second had to do with the anchor means and rigid security. Yeah, but what were you asking for as part of the in limine motion? That they not be presented... they not be allowed to present evidence that is inconsistent with her claim construction, which requires horizontal displacement. And she denied those motions, right? She granted the motion. And the next thing, on the record, she revisited the issue of claim construction. And we presented to her our argument that her construction required this horizontal displacement. And she stated very clearly in the record that she disagreed with us and agreed with the plaintiffs and that there wasn't a requirement for horizontal displacement. So what? The jury didn't hear that, did it? No, Your Honor, but it prevented us from putting on a case of non-infringement for lack of horizontal displacement. Did you try to put on evidence that she excluded? By her claim construction. Did you? No, Your Honor. No, you didn't put on any evidence that she excluded. You didn't offer any evidence that she excluded. I mean, this was all argued to the jury, right? That's correct. It's an argument to the jury. We put on evidence of what our device did, but the thing we were prevented from doing was making a case to the jury that our device doesn't do a requirement. I don't understand how you were prevented from doing that. She didn't even try. You could have offered evidence on this subject to the jury, and if the court had excluded the evidence, then you'd have an argument, but you didn't offer the evidence to put in the record, right? Your Honor, the factual evidence had to do with our accused deck, and the evidence was all presented. There was nothing left out. The evidence showed that there was no horizontal displacement. What's the error? I don't understand what the error is. She didn't exclude any of your evidence. She didn't refuse a jury instruction. You didn't include it in the Jamal motion. What's the problem? Her claim of construction was an error for failing to include a limitation that an infringing deck displays horizontally. She made it clear on the record that her language, which was adopted from Colossi's proposed language, excluded horizontal displacement. It's clear from the specification in prosecution history that horizontal displacement is what made the flexible hinge novel and patentable over prior art. Colossi's position all along has been that flexure is sufficient to satisfy the flexible hinge. The idea that claim construction is a ruling, has the opportunity to be a ruling on a ruling basis. We've approved changes in claim construction. Judges can change the claim construction. You've got to raise it in a way that allows us to review an error that the court made, either an error in the instruction and the exclusion of evidence or on Jamal. You didn't do it, but I don't mean to take up your time on this. You should move on to something else. Yes, Your Honor. To the extent that the court is willing to acknowledge that the lower court erred in construing the claim, I would direct its attention to the specification where it calls for the flexible hinge to displace, not only through flexure but through longitudinal elasticity. The whole point, which was further disclosed in the prosecution history, demonstrates that it's the material properties of the hinge that allow for this second type of absorption. With regard to the issue of the reverse doctrine of equivalence, it's clear that the lower court used an improper standard to deny this defense. This court should not allow what was brought as a Rule 37 discovery sanction to be resolved by the lower court through this ruling that the facts were not persuasive to the judge herself. To the extent you can allow a district court to deny the reverse doctrine of equivalence as a viable, equitable defense would be through, without it giving a full opportunity to be heard, it shouldn't be sanctioned by this court, certainly, and by applying a standard where she was judging unidentified facts allows this court no opportunity to use an abusive discretion standard. I know she said this is a complicated concept and a doctrine of equivalence is bad enough in calling it the reverse, but are you also saying that the merits were not argued to the jury of the differences between what had been invented and the accused devices? All the evidence was allowed to go to the jury. What they weren't provided with was the opportunity to find non-infringement based upon those differences. The district judge said you can't argue that. If it falls within my claim scope, then you infringe and there isn't an equitable relief out there for you. And the basis for her ruling was that she didn't find the facts to be persuasive, and this was based upon a motion in limine filed a week before trial by the plaintiffs to say don't let the other side argue. Well, did you provide any expert? I mean, were there any facts on the record other than attorney argument? I mean, in connection with this allegation, did you put forward expert testimony or anything else? At trial, Your Honor, we certainly put on our own expert to explain how our... No, before she ruled on the motion. No, Your Honor. This was a motion limiting to exclude argument based on a Rule 37 violation. And we argued that there was no prejudice even if they argued it was untimely and there was prejudice. And we said even if it's untimely, there's no prejudice here. We just should have the opportunity to argue non-infringement based on the reverse doctrine of equivalence. The evidence is going to be the same, and all that's left is the opportunity for the jury to make that determination, this underlying question of fact, that there were principle changes made to this flexible deck that Colossi had invented. Their whole theory of infringement was that we changed the nature of a wood hinge into a flexible hinge by changing the structure of something else, namely the rigid planar member. Their argument was by making the rigid planar member more stiff, you turn wood into something that's flexible and can absorb shock. We flexure as well as its longitudinal elasticity. Now they'll say we just proved that it did flexure, that it just bent. But that wasn't his invention. His invention was something else. And this concept of changing something, changing what is a fixed rigid wood property into something else, a flexible hinge, if that isn't true, something that falls within the scope of his patent, it does it in a very different way and really is a prime example for why the reverse doctrine equivalent is still available. Was it argued that there was no infringement because it functioned in a different way from what was shown in the patent? There was argument that the... The judge precluded you from arguing that. Yes, Your Honor. We couldn't argue non-infringement based upon the fact that there was flexure. Okay. So that was what we were looking to do. We thought that the court had erred in claim construction by not including this horizontal displacement and leaving the only thing that absorbed shock to be the flexure. But then we wanted to say even if that's a correct claim construction, we should have had the opportunity to at least argue that we achieved that in a very different way than the Colossi flexible hinge. With regard to the JMOL, their case boiled down to one thing. They tested one deck and then they asked the jury to find that all other ten decks were the same. And the basis for that, they claimed, was that we had told them pre-trial that there was essentially one deck out there, the stable flex deck. Well, what was wrong was their premise of infringement. They started out this entire case by accusing stable flex of infringement, although stable flex was just a trademark on multiple decks, multiple models with various designs in their decks. And when we wanted to present that evidence at trial, they objected. They said that this was trial by ambush, that we were trying to change, slip in decks that weren't really accused decks, and even brought a motion afterwards for sanctions against us. And the trial judge denied their motion and said that she didn't think there was any reasonable basis for finding that they didn't know that there were other decks available. So if I understand correctly, their expert testified about one model, right? That's correct, Your Honor. And didn't you admit that there was one other model that was the same as that? Mr. Gianelli testified that the 530 was like the 600. So as to both of those, you agree that there was sufficient evidence to reach a verdict on this point? I would, Your Honor, with the caveat that the judge kind of laid it out that the jury was led to understand that it was sort of an all or nothing proposition here. Right. So your objection is that there isn't evidence with respect to the other nine decks? Yes, Your Honor, that we believe that a reasonable jury couldn't find that there was evidence that those decks were like the ones that was tested. And you told that to the jury, I assume? Yes, Your Honor. That was a key part of the case. The point is there is no evidence to point to that would allow them to make that connection between the deck tested and the remaining decks. What they'll try to do is argue that there were pre-trial statements that said stable flex decks have this one-inch gap and have the stiffeners and the anchor beams. But that is not a statement that's inconsistent with the testimony of Mr. Gianelli at trial where he said that's a true statement, but it's only as to the present decks and that the decks from 2000 forward were different than the decks prior to that. So the issue here is you get damages for everything, the damages were for everything sold after 2000, but you're arguing that some of those decks manufactured, sold in 2000 were created before that, before 2000. They were different. The design, there were designs, yes, Your Honor, there were designs of decks pre-2000. And did you come forward with any testimony or evidence as to even what number, what portion of the universe that they were seeking damages over, what portion of those were manufactured differently before 2000? The jury wasn't in a position to really make that determination and was really to the plaintiff to try to break that out on a deck-by-deck basis. Well, they showed whatever evidence it was that the jury obviously bought is that everything sold after 2000 was an infringing device, was infringing. And your argument to that was no, because some of those were manufactured before 2000 and were different? Our argument is that they wouldn't know which decks to find infringing because the only one that was identified was sort of obliquely identified, unspecifically, and the only way to get to any specific deck was from Mr. Gianelli, the defendant's witness, who said he thought that the one tested was like this one. But other than that, those other nine decks becomes a mystery as to whether or not they infringe. Well, what was the evidence as to how many decks were sold after 2000 of each model? Yes, Your Honor. What was their damage as evidence? Your Honor, they put on an expert who had done the calculations, and I have to check with my colleague to figure out whether or not. I don't believe those numbers were specifically put into evidence other than the ultimate conclusion as to the total damage as numbers. So we can't tell from this record how many, what the jury verdict was based on, whether it was just based on these two models or the 11 models or whatever, right? We believe that the jury... Did the expert say that he was computing damages for the 11 models? Yes, Your Honor. And that was the damage of evidence the jury ultimately awarded? Yes, Your Honor. I see him out of time. Okay, let's hear from the other side. Mr. Laney. Good afternoon. I think you have a real problem here on the damages proof because I'm having a very hard time finding anything in the record that says that the other nine models were the same as these two. Well, we have the testimony of Mr. Gianelli himself in which he testified that since 2002, the Sable Flex has been structurally the same. And the jury was able to... Yes, but that doesn't answer the question about the pre-2000 models, right? Well, there was no evidence that the ones that were actually sold post-2002 were any different than the ones later. Yes, but that's your burden of proof. It's your burden of proof to show that all 11 models infringed. Your damages expert computed the damages based on 11 infringing models, right? Correct. Right? And if the only evidence supports infringement is to two, you've got a problem, right? Except for the fact that their testimony says they're all structurally the same. Well, where's the testimony? The testimony is... 693. 693, 694. This is Mr. Gianelli. The question was asked, is the Sable Flex suspension system the same structurally in all the treadmills that it's utilized in, today or ever? Well, let's start with today. Today, they're all the same. How long has the Sable Flex suspension system been the same as it's implemented today since the 600T introduction, which was, unfortunately, sometime in the year 2000, when I wasn't there, but it's sometime in the year 2000. Do you know if it was prior to October 2000? I don't know for sure, but I believe it was. Now, that doesn't qualify. That says Sable Flex. The structure of Sable Flex is the same. Wait a second. I don't understand what you're saying. He says that the models today are the same, but he doesn't say that the preexisting nine models were the same. Where does he say that? He says that the structure for Sable Flex suspension system has been the same since 2002. And the other nine models were all... All Sable Flex, as he mentioned... Were all since 2002. Only claims were asserted began in 2002. No, no, no, no, no. September afterwards. You only claimed sales after 2002. Correct. You claimed the sale of models before 2002. And what he's saying in this testimony is that the models that were designed after 2002 were all the same. He's not saying that the models that were designed before then but sold after 2002 were the same. That's the problem. Well, he testified that Sable Flex suspension system is structurally the same since 2002. Now, what happened is it's the patent switch. We have interrogatory responses which we cross-examined and modeled. No, but you're not answering my question. He's not testifying that the earlier models were the same. Well, he does testify, and maybe I can address this differently, which is if you go to... I'm sorry. You know, I'm looking at where the court asks whether everything... Were any machines that were designed before... No, wait. The court also acknowledged... They all had the same structural elements. That was on the same page that you... Correct. ...page after what you were reading to us before. The court... Wait a minute. I have a question. Were other Sable Flex machines sold after 2000? That is, I understand what you just said, that all those designed and manufactured, designed after 2000, September 2000, are the same system. Now, would that have to mean that the system was changed in order to accommodate the new structure, the new flexible structure of the prior machines? Well, they didn't. They never... What they presented was that Sable Flex varied. It changed its form every now and then. They never said that one model was dedicated to just one structure, another model was dedicated to another structure. That's not their burden. It's your burden. It's correct, and we showed that these models did change. We also showed that they described Sable Flex in only one way, and the idea that Sable Flex... If you admit that the models changed, where's the evidence that the earlier different models infringed? Well, I think the problem is that you're presuming that Sable Flex, they proved that Sable Flex covers different structures. And I believe we proved that when they labeled it Sable Flex, that proved only one structure. And the reason we did that... Okay. I've got to get to it. If I could... That testimony that Judge Newman just pointed you to, the court asks this question, says the ones designed after 2000 are the same, and he says, yeah, designed the same. But that's not saying the pre-2000 designs were the same. If you could go to A290. 290. And beginning... You have, at the beginning of the question, it says, and if you look at the four supplemental response interaction number eight, you're talking about the Cybex treadmills, not a particular model, correct? No, I'm talking about the most current model. Well, let's look at it. Then he goes on and he describes how he describes it. And then down below he says, and you're talking about not just one model but multiple models. In this language, yes. So what he pointed out is that all the models, you described Sable Flex to encompass one type of structure. And that description doesn't apply to just one model. It's multiple models. Well, he says this description covers all the models, but the question is whether this description shows infringement. And we relied on this description to prove infringement because this describes the exact model, this structure that was described, is the exact one that was analyzed by our expert. There's no dispute about that. There's no dispute that this describes an infringing product? The product that's found infringing, no dispute. I'm sorry, no? No dispute that this describes the product that was analyzed by our expert. So on cross-examination, then, was this issue pursued? Absolutely. And I will mention real quick, I don't even think this court has jurisdiction to decide the JMOL on it. I mean, the Third Circuit has analyzed that exact statute, and the statute rule 4A, 4B, 2, and itself said that unless you file a new notice of appeal or amended notice of appeal, that you haven't perfected jurisdiction. That argument seems to show a lack of confidence in the merits of your position. Well, it doesn't. We're plenty confident. Even the district judge herself who was at the trial held that there was jury testimony showing that all these structures were the same. The question is whether she was right. That is the question. But it's a question of fact, and the question that this court has to look at is whether or not there's enough evidence. The burden is really, at this point, because the jury did conclude that they all were structurally the same based on the evidence presented, the burden is really heavy upon them to show that they got it wrong and that there's substantial evidence that shows that the jury couldn't go but only one way, which is against us. And I don't believe that's true in light of the interrogatory responses in which he says the stable flexor structure system described applies to multiple and not just one model. And so, and then in light of also the testimony, him saying the structure's been the same since 2000, and this case only applies to damages from 2000, September forward. But that applies to seals, not to those that were, the models that were in effect before that time. It applies to seals. Those seals could have been on models developed before 2000, right? Correct. And in an interrogatory response, they were asked, they were asked to identify those models that incorporate the stable flexor suspension system. They identified all the ones that incorporated stable flexor suspension system. And our, I don't have it here because obviously we didn't cite it, but the expert relied on that representation that these incorporated the stable flexor suspension system. Then they described the stable flexor suspension system being only one structure. Yeah, but this expert also testified that you never told him what the stable flexor suspension system was. That was their expert. Cybex's own expert said he was never told what it was. Not our expert. If you look, that was Mr. Harrigan. That was their own technical expert. So they had nobody to get up there on the stand and refute their own testimony saying there's one structure and they're all the same. Well, is 392, is that your expert? 392 is, yes. Yeah. But if you look at 393, he says, I've looked at the legend and the pro model, but I have not looked at every single one of those models. I'm relying on the testimony that says they incorporate the same features. And then he's asked on 4000 about one of these other models as to whether it has the gap that's necessary for infringement, and he says it doesn't appear to have the gap, right? To one that was presented as a demonstrative, yes. But they never proved that that was, in fact, the 700T that they were arguing that it was supposed to be. We dispute that that's what it was. And, in fact, if you look at their own opinion of their own counsel. So you're saying this isn't one of the 11 models that he said lacked the gap? Correct. We're saying the structure is the same for all. They called StableFlex, it's one structure. They testified that StableFlex represented one structure. Their own opinion of counsel understood that the 700 was the same structure as the one that was analyzed by our expert. There was no testimony to refute what they had already testified and represented that the StableFlex was one structure, and that one structure that was analyzed by our technical expert. I mean, as a district court properly recognized, I don't believe it was our burden to go in and have him do a separate analysis of each one once they've agreed that the structures are the same. And going back to the issues of motion to eliminate for the reverse doctrine of equivalence, that was a pure motion to eliminate. We asked to exclude that because they didn't raise that as a defense until two months before trial. She didn't base her decision on the untimeliness. Well, she granted our motion, and our motion was only on Rule 37. She does say that she doesn't see any persuasive facts, but I don't believe that that in and of itself is clear evidence that she went summary judgment route. I think it's just as plausible to say that she doesn't find any persuasive facts supporting their position, that they've disclosed it and that we wouldn't be prejudiced. They make a one-sentence line, and to point out the clear prejudice, had they told us earlier, we would have been able to have our own expert testify or provide testimony to refute their attorney argument. I mean, they had an expert. None of their experts did any analysis on reverse doctrine of equivalence, but we would have liked the opportunity to have our expert do an analysis. And so I think there is definitely clear prejudice there from preventing us or not giving us the ability to prepare for that defense, and I think the court properly rejected it. In fact, I think Rule 37, in its present form, almost demands that the court exclude that defense when it's raised that late of a date with no articulation of facts to support it. If there's no further questions. Okay. Thank you, Mr. Laney. Thank you. Mr. Fuhrer, you have a couple of minutes. So Mr. Laney says the interrogatory answer tells you that all the models are the same for purposes of infringement. What's wrong with that? I think that it is asking this court to ignore all the evidence and lift one statement and analyze it in a vacuum. But he says that you conceded that the interrogatory answer described an infringing product. Is that correct? The interrogatory answer did describe, under the court's claim construction, yes, Your Honor. It had a gap. It had stiffeners that stopped just before the anchor means. And the interrogatory answer was describing all 11 models, right? Could you repeat that again? The interrogatory answer was addressing all 11 models. No, Your Honor. It was addressing the ones that had the features that the plaintiff believed was infringing. Their infringement analysis was made clear by the time we were answering these interrogatories, and we were responding to the fact that there are stable flex decks that have these particular features to it. Does the interrogatory question and answer appear in the record? The answer is quoted here, but where's the question? Did you put it in the appendix? It is not, Your Honor. I believe, as Mr. Laney stated, the question was, please describe the features of the stable flex, and we described the features of the present stable flex in that answer. And when pressed on this at trial in front of the jury, well, you know, wasn't this your answer? Isn't this what you said? Mr. Gianelli explained, yes, but I was only talking about the present structure, and I tried to tell you in the past that these are not all the same. I tried to tell you in a deposition, which was the very language that Mr. Laney was reading, that demonstrated that in a prior deposition, when asked, are all the structures the same, Mr. Gianelli responded, do you mean now or ever? And they never pursued the ever. They never wanted to figure out which ones were different. They just wanted to focus on the ones that were infringing. I see I'm out of time. Any more questions? Any more questions? Okay. Thank you, Mr. Freer. Thank you, Mr. Laney. The case is taken under submission. All right. The court is adjourned at 6 p.m. this afternoon.